# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**UNITED STATES OF AMERICA,**

    Plaintiff,

**v.**                           **CRIMINAL ACTION NO.: 3:14-CR-28**
                                       **(JUDGE GROH)**

**SHAQUILLE MONTEL ROBINSON,**

    Defendant.

## ORDER REJECTING IN PART REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the report and recommendation ("R&R") of United States Magistrate Judge Robert W. Trumble. On July 11, 2014, the Defendant filed a motion to suppress [Doc. 21]. The Court referred this motion to Magistrate Judge Trumble for submission of an R&R concerning that motion. Magistrate Judge Trumble filed his R&R [Doc.30] on August 8, 2014. He recommends that this Court grant the motion to suppress. For the following reasons, the Court rejects in part the R&R.

### I. Background

At 3:55 p.m. on March 24, 2014, an unidentified man called the Ranson Police Department. The secretary transferred the call to Officer Crystal Tharp. The caller told Tharp he witnessed a black male in a bluish greenish Toyota Camry, driven by a female, load a firearm and conceal it in his pocket. The caller stated the car had just left the Ranson 7-Eleven parking lot and he was leaving as well. Officer Tharp knew the 7-Eleven was located on North Mildred Street next to the Apple Tree Garden apartments. At the

suppression hearing, officers testified that this 7-Eleven was known for drug dealing, firearm violence, and other criminal activity. Officer Tharp relayed the tip to Officer Hudson and Officer Roberts.

Two to three minutes after the call, Officer Hudson conducted a traffic stop of a vehicle matching the caller's description on North Mildred Street for a seatbelt violation he observed. The stop occurred approximately seven blocks south of the 7-Eleven. Officer Roberts subsequently arrived on the scene. He approached the vehicle, opened the passenger side door, and asked the Defendant whether he had any weapons on him. The Defendant gave Officer Roberts no answer but reacted to the question with what Officer Roberts described as a weird look. Officer Roberts then conducted a pat down for officer safety. He felt the handle of a firearm at the Defendant's waist during the frisk. The officers then handcuffed the Defendant and seized the weapon. At that time, Officer Roberts recognized the Defendant who is a convicted felon.

Based on this incident, the Defendant was indicted in this case upon one count of felon in possession of a firearm and ammunition. The Defendant moved to suppress evidence of the firearm and ammunition obtained during the frisk, arguing that the frisk violated his Fourth Amendment rights. After a suppression hearing, Magistrate Judge Trumble issued a report recommending that the Court grant the Defendant's motion. The United States timely objected to the R&R. The United States argues that the frisk did not violate the Fourth Amendment because there was reasonable suspicion that the Defendant was armed and dangerous. The Defendant disagrees in his response.

## II. Standard of Review

The Court may designate a magistrate judge "to conduct hearings, including evidentiary hearings, and to submit . . . proposed findings of fact and recommendations for the disposition" of a motion to suppress. 28 U.S.C. § 636(b)(1)(A)-(B). A party may file written objections to the R&R within fourteen days after being served with a copy. Id. § 636(b)(1). A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. This review requires "a *de novo* determination, not a *de novo* hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980). The Court, however, is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections are addressed. Thomas v. Arn, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of *de novo* review. See Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Accordingly, this Court will review those portions of the R&R to which the United States objects *de novo* and the remainder of the R&R for clear error.

## III. Discussion

The United States argues that the frisk was lawful because the anonymous tip and the fact that the events occurred in a high-crime area, taken together, gave rise to reasonable suspicion that the Defendant was armed and dangerous.

The Defendant raises several arguments in response. First, he contends that the anonymous tip does not support reasonable suspicion because it did not allege criminal activity as a person can legally carry a concealed firearm in West Virginia with a permit. Second, he points out that Officer Hudson and Officer Roberts testified that they would

3

have acted as they did solely based on a tip reporting gun possession.  Finally, the Defendant argues that none of the factors that generated reasonable suspicion in United States v. George, 732 F.3d 296 (4th Cir. 2013), cert. denied, 134 S. Ct. 1530 (2014), are present here.

Because neither party disputes that the seat belt violation provided probable cause to stop the vehicle, see Whren v. United States, 517 U.S. 806, 810 (1996), the dispositive issue here is whether the frisk violated the Defendant's Fourth Amendment rights. However, the Court finds the seatbelt violation observed by Officer Hudson did provide probable cause to stop the vehicle.

A frisk of a passenger during a valid traffic stop is lawful if the police "harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." Arizona v. Johnson, 555 U.S. 323, 327 (2009).  "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  Terry v. Ohio, 392 U.S. 1, 27 (1968).  This standard is objective; courts do not consider "the officer's subjective state of mind."  George, 732 F.3d at 299-300.

To determine whether reasonable suspicion exists, courts consider "the 'totality of the circumstances' to determine if the officer had a 'particularized and objective basis' for believing that the detained suspect might be armed and dangerous."  Id. at 299 (citations omitted).  "A host of factors can contribute to a basis for reasonable suspicion, including the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect."  Id. (citing Illinois v. Wardlow, 528 U.S. 119, 124 (2000)).  Multiple factors may together "create a reasonable suspicion even where each factor, taken alone, would be

4

insufficient." Id. at 300 (citing United States v. Branch, 537 F.3d 328, 339 (4th Cir. 2008)).

An anonymous tip is another factor that can create reasonable suspicion. See Navarette v. California, 134 S. Ct. 1683, 1688 (2014). To do so, the tip must "demonstrate sufficient indicia of reliability to provide reasonable suspicion." Id. (citation and quotation marks omitted).

The Supreme Court most recently examined an anonymous tip's reliability in Navarette. See id. at 1688-1690. In that case, a 911 caller reported that a "Silver Ford 150 pickup" license plate 8D94925 traveling southbound on Highway 1 at mile marker eighty-eight had run the caller off the road "and was last seen approximately five [minutes] ago." Id. at 1688-87. The dispatcher broadcasted this information at 3:47 p.m. Id. at 1687. At 4:00 p.m., an officer passed the pickup near mile marker sixty-nine. Id. The officer pulled the pickup over at approximately 4:05 p.m. Id. Officers discovered thirty pounds of marijuana during the stop and arrested the defendants. Id. The Court held that the 911 call had sufficient indicia of reliability to provide reasonable suspicion that the pickup had run the caller off the road, thereby justifying the investigatory stop. Id. at 1692.

In reaching this conclusion, the Court emphasized three qualities of the tip. First, "the caller claimed eyewitness knowledge of the alleged dangerous driving." Id. at 1689. Second, the caller made the report contemporaneous with the pickup running her off the road, an indication it was "especially trustworthy" under sound principles of evidence law. Id. Third, the caller's use of 911 indicated her veracity as 911 provides "some safeguards against making false reports with immunity" (e.g., the ability to trace calls). Id.

The Court also took great care to distinguish Navarette from its decision in Florida v. J.L., 529 U.S. 266 (2000) that an anonymous tip was not reliable. J.L. involved an

5

anonymous caller who reported to police that a young black male standing at a particular bus stop was wearing a plaid shirt and carrying a gun. 529 U.S. at 268. The Court found that the Navarette tip differed from the J.L. tip in two key respects. The J.L. tip, the Court explained, "provided no basis for concluding that the tipster had actually seen the gun." Navarette, 134 S. Ct. at 1689. There also was no indication that the J.L. tip was made contemporaneously with criminal activity or under the stress of excitement caused by a startling event. Id.

Against this background, there are sufficient indicia that the anonymous tip in this case is reliable. See id. at 1688. Two circumstances support this conclusion. First, the caller had eyewitness knowledge of the alleged loading and possession of the firearm by the Defendant. See id. at 1689. He told Officer Tharp that he actually saw the Defendant, who was in a bluish greenish Toyota Camry, load the firearm and conceal it. Thus, like Navarette, the fact that the caller witnessed the event indicates that the tip is reliable. See id.; see also United States v. Edwards, __ F.3d __, 2014 WL 3747130, at *6 (9th Cir. 2014) (finding an anonymous tip reliable based, in part, on a determination that the caller actually witnessed the shooting he reported). Second, the caller made the report shortly after observing the Defendant load and conceal the firearm. See Navarette, 134 S. Ct. at 1689. His statement that the car in which the Defendant was a passenger had "just" left the 7-Eleven indicates that he made the report immediately after watching this event. The close temporal relationship between the caller witnessing the Defendant's actions and his report lends further credibility to the tip just as it did in Navarette. See id.; see also Fed. R. Evid. 803(1). Taking together the caller's eyewitness knowledge and the contemporaneous nature of the report, the tip was sufficiently reliable. The fact that the

6

caller did not use the 911 emergency system does not alter this conclusion because this tip is still much more than a "bare-boned" tip about guns like the J.L. tip.  See 529 U.S. at 273.  Indeed, this tip has the two characteristics that the Supreme Court specifically stated were absent in J.L.  Accordingly, the anonymous tip supports the reasonable suspicion analysis because it contained sufficient indicia of reliability.

Viewing the totality of the circumstances, there are objective and particularized facts giving rise to reasonable suspicion that the Defendant was armed and dangerous.  The officer observed the seatbelt violation in the vehicle matching the caller's detailed description of it only three minutes after receiving the reliable tip and just a few blocks from the 7-Eleven.  The fact that the officers found and stopped the vehicle in the same high-crime area as the 7-Eleven mere minutes removed from the tip, and that the Defendant did not answer and looked weird when asked if he was armed, would lead a reasonably prudent officer to believe that the officer's safety or that of others was in danger.

The possibility that the Defendant could have lawfully possessed the firearm does not negate that the totality of the circumstances give rise to reasonable suspicion.  The Supreme Court has "consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.'"  Navarette, 134 S. Ct. at 1691 (quoting United States v. Arvizu, 534 U.S. 266, 277 (2002)).

The Defendant's contention that Officer Roberts needed reasonable suspicion of criminal activity is misplaced because this case involves a traffic stop, not an investigatory stop.

The Fourth Circuit decision in George does not call for a different outcome.  In George, the court upheld the frisk of a passenger in a validly stopped car because the

officer had reasonable suspicion he was armed and dangerous. 732 F.3d at 299, 302. The officer in <u>George</u> had no information indicating the passenger had a firearm or other weapon before making the stop. <u>See</u> <u>id.</u> 299-302. The Fourth Circuit reached this conclusion by analyzing the circumstances of the stop itself. <u>See</u> <u>id.</u> at 300-01. In contrast, reasonable suspicion in this case derives not only from the stop itself (i.e., the Defendant's weird look and failure to verbally respond to the inquiry whether he was armed), but also additional factors from the anonymous tip that the Defendant recently loaded a firearm and concealed it on his person in a public parking lot in a high-crime area.

Therefore, this case is distinguishable from <u>George</u>.

In conclusion, following the valid traffic stop for an observable seatbelt violation, Officer Roberts lawfully frisked the Defendant for weapons to protect himself and others because reasonable suspicion that the Defendant was armed and dangerous existed based upon the Defendant's reaction at the scene and the reliable tip, either of which would justify the pat down search. The Court therefore sustains the United States' objection and denies the motion to suppress.

### IV. Conclusion

Upon careful review of the record, the Court **SUSTAINS** the United States' objection to Magistrate Judge Trumble's report and recommendation and **DENIES** the Defendant's Motion to Suppress.

Accordingly, it is the opinion of this Court that Magistrate Judge Trumble's report and recommendation should be, and is, hereby **ORDERED REJECTED IN PART**. The Court adopts only the following sections of the R&R because the parties have not objected to

them and the Court finds no clear error therein: Section II (procedural history), Section III (statement of the facts), and Section V.A (lawfulness of the traffic stop).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** August 14, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE